**GOLDFARB v. C. W. GREESON CO. et al.**

Civ. No. 2272.

District Court, W. D. Louisiana,
Shreveport Division.

March 31, 1948.

Watson & Williams, of Natchitoches, La., for plaintiff.

Bullock & Bullock, of Shreveport, La., for defendants.

DAWKINS, District Judge.

On October 2, 1947, plaintiff filed in the state court for Natchitoches Parish, Louisiana, a petition alleging that he had purchased from defendant, a partnership, composed of C. W. Greeson, "who has his legal domicile in Baton Rouge, Louisiana, P. D. Holley, who has his legal domicile in Benton (Bossier Parish), Louisiana, and A. Breitling, who has his legal domicile in Haughton, (Bossier Parish), Louisiana, * * * one P and H dragline, Model 1056, Serial No. 10247, equipped with 110 foot boom and Buda Diesel light plant and two 3-yard Hendricks buckets"; that said equipment was at the time of filing suit "on the property of J. Titus Frederick and Sidney Kaffie on the north edge of the city of Natchitoches"; that the transaction constituted a "complete sale" and that the plaintiff is the owner; that he had deposited in the Bossier State Bank and Trust Co. of Bossier City, Louisiana, the sum of $2,000 "as a deposit" on said dragline; that he had tendered the balance of the purchase price, $53,000 to defendants and their attorney and stood ready to pay the same, and that "contemporaneously with the filing of this petition" he deposited the said $53,000 in the same bank. Plaintiff alleged that he thus became "the owner of the * * * dragline (and) is entitled to immediate possession thereof, which possession the defendant, C. W. Greeson Co., has refused to deliver".

Petitioner finally alleged that notwithstanding amicable demand, defendants had refused to surrender said property and fearing that they would conceal or dispose of said dragline, in their possession, during the pendency of this suit, a writ of sequestration was necessary to protect the rights of the petitioner in the premises.

Reserving his right to sue for damages for failure to deliver the dragline, plaintiff prayed as follows: for a writ of sequestration; for service upon the partnership and its individual members, and in due course for judgment against defendants, "commanding them to turn over and deliver to your petitioner, the P and H dragline, herein above described without delay"; that his right to sue for damages be reserved, for costs, that the sequestration be maintained, and that said property be turned over to petitioner, and for costs and general relief.

The petition was sworn to by an attorney for plaintiff and thereupon the Clerk signed the order for the issuance of the writ. Defendant, C. W. Greeson, acknowledged service and waived citation, both for himself and the partnership, on the day the petition was filed, October 2, 1947. Plaintiff executed bond in the sum of $1,000, fixed in the order by the Clerk, signed by plaintiff's attorney, and by the latter as surety, and the writ was issued and executed by the sheriff on the day of its issuance "by seizing and taking into my official possession the within described property * * *".

On October 4th, defendants filed a petition for removal to this Court, and on the same date it was granted by the judge of the state court. The record was filed here on October 6, 1947, and on the following day defendants obtained from this court an order directing the marshal to apply to the state court for surrender of the property, which he did, as shown by his return dated October 13, 1947, reciting that on that day he had delivered a copy of the application and order to the sheriff of Natchitoches Parish, and seized "from said sheriff and taking (taken) into my possession" the dragline and accessories.

On October 10, 1947, on demand of the defendants this court ordered plaintiff to increase the bond given for the writ of sequestration to the sum of $8,000 or that the property be released, which was done on October 13th following. On the latter date this court permitted defendants to release the property on forthcoming bond in the sum of $55,000, which was executed and the property released.

Thereupon, on October 20, 1947, plaintiff filed an amended petition alleging damages arising from the failure to deliver the property, in the sum of $31,000. On No-

vember 1, 1947, defendants moved to dismiss the complaint "for the reason that Natchitoches Parish * * * was not the residence of any of the defendants * * * when the suit was filed" but that they were domiciled in Bossier Parish and Baton Rouge, Louisiana, as alleged in plaintiff's petition.

On December 5th, defendants filed a motion "for a more definite statement or bill of particulars of the following matters of the original and amended complaints herein, which are not averred with sufficient definiteness or particularity to enable them to properly prepare their respective pleadings or to prepare for trial", and setting forth in detail the information desired.

Subsequently, on February 23, 1948, defendants moved to dismiss the "amended petition * * * for lack of jurisdiction" because (1) none of them were residents of Natchitoches Parish, and (2) the state court where the suit was filed was "without jurisdiction over the person of the defendants * * *."

On March 3, 1948, both the motions to dismiss for want of jurisdiction or venue and for a bill of particulars were submitted on brief. Both sides have filed citations of authorities only. Little help has been given the court by discussion of the principles involved, merely quotations from the statutes and some of the cases.

■ Article 163 of the Louisiana Code of Practice deals with the writ of sequestration mainly in connection with claims of ownership and liens upon real property but includes also "all cases of provisional seizure or sequestration" as actions in which "the defendant may be cited * * * either within the jurisdiction where the property * * * provisionally seized or sequestered is situated or found, though he (defendant) has his domicile or residence out of that jurisdiction, or in that where the defendant has his domicile, as the plaintiff chooses * * *." Of course, this means in those cases where the law allows provisional seizure or sequestration; and any judgment rendered is confined to the property seized, unless defendant appears and submits himself to the jurisdiction.

Article 275 of the Code of Practice declares:

"Sequestration may be ordered at the request of one of the parties in a suit, in the following cases

\* \* \* \* \* \*

"2. When one sues for the possession of movable property and fears that the party having possession may send the property in dispute out of the jurisdiction of the court during the pendency of the suit.

\* \* \* \* \* \*

"8. A sequestration may be ordered in all cases, when one party fears that the other will conceal, part with, or dispose of the movables in his possession, during the pendency of the suit, upon complying with the requisites of the law."

■ It has been held by the Supreme Court of Louisiana (and while the decision, Baer v. Kopfler, found in 19 La.Ann. 194, is an old one, a careful examination of the digests fails to disclose any subsequent case directly in point either affirming or overruling it) that a writ of sequestration can issue, insofar as personal or movable property (a civil law term) is concerned, only when the petitioner claims the ownership or a lien of some character upon it. The syllabus of that case reads: "To entitle a party to the rigorous remedy of sequestration, the affidavit must state either that he has a privilege on the property, or that he is the owner of it. C.P. art. 275."

In the succession of Macheca, 147 La. 164, 84 So. 574, the state court cited Baer v. Kopfler in connection with an attempt by a wife to sequester the interest of her former husband in the estate of his mother, based upon a judgment of separation, for alimony rendered in the state court of New York, by alleging that it was within the power of said husband to conceal, part with, or otherwise dispose of the movables and other assets in his possession representing his share and interest in his mother's estate during the pendency of the suit. It was held that the foreign judgment created no lien upon any of the property, and hence the writ of sequestration would not lie.

The various articles of the Code of Practice dealing with sequestration were quoted

and analyzed, including Article 269 defining it, in substance, as the means of holding and preserving property or thing "until after the decision of a suit, in order that it be delivered to him who shall be adjudged *entitled to have the property or possession of that thing."* (Italics by the state court.)

The petition or complaint in the present case alleges that the plaintiff purchased the dragline and accessories 'from the defendants, "and that he is the owner * * *". Articles of the complaint otherwise indicate that he had entered into an agreement to purchase the property for the sum of $55,-000 and that the defendants "had accepted the sum of Two Thousand Dollars ($2000) as a deposit on said dragline"; and that he had tendered the balance of the purchase price, which on refusal had been deposited in a named bank. The prayer is that after due proceedings there be "judgment in favor of petitioner, Jay Goldfarb and against defendants commanding them to turn over and deliver to your petitioner the property, and that the writ of sequestration be maintained".

Article 2456 of the Louisiana Civil Code provides as follows: "Contract of sale—When complete.—The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

See Dart's Louisiana Civil Code (2d Ed.) Vol. 2, p. 198, and authorities cited in footnotes, especially Nicolopulo, v. His Creditors, 37 La.Ann. 472; Sholars v. Hardee, 28 La.Ann. 259; Winter v. Atkinson, 28 La.Ann. 650; and Bennett v. Martin, 127 La. 165, 53 So. 479.

■ In view of the allegations of the petition, the provisions of the Civil Code and the decisions of the state court cited, the petition in this case comes within the letter of Article 163 of the Code of Practice, permitting seizure, by sequestration of property in the parish where it is found, although the defendant "has his domicile or residence out of that jurisdiction * * *."

■ Therefore, the state court having had jurisdiction to try the issues thus presented, removal here on the ground of diverse citizenship transferred that jurisdiction to this court, thereby enabling it to pass upon the matter as fully as could the state court.

The plea to the jurisdiction will be overruled.

Under express provision of Article 163 of the Code of Practice above cited, where the suit is filed and the writ of sequestration issued at a place other than the domicile of the defendant, the judgment is restricted to the property seized—here the dragline machine.

■ The Federal Rules of Civil Procedure, rule 8, 28 U.S.C.A. following section 723c, permit inconsistent defenses. Hence, the plea to the jurisdiction followed later by a motion for a more definite statement of facts does not have the effect of waiving the jurisdiction, since neither is a pleading to the merits waiving the first plea. However, since the seizure was lawful and defendants had the right to have property released on forthcoming bond, if it is disposed of before final judgment and plaintiff is found to have been the owner, entitled to possession, then the bond takes its place, with the consequent right to proceed upon the bond in place of the dragline for such relief as the law affords. Defendants in applying for and executing the release bond, submit themselves to the jurisdiction of the court for subsequent proceedings. See Articles 279 and 280 Dart's Code of Practice 1932 and authorities in footnotes and supplement.

Motion to dismiss supplemental petition will be overruled.

Proper decree should be presented.