Covas et al. vs. Bertoulin et al.

---

## No. 10,979.

### MRS. STAMATI COVAS ET AL. VS. G. B. BERTOULIN ET AL.

The defendant not being subject "to an habitual state of imbecility, insanity or madness" could stand in judgment in partition proceedings, and the title ac-quired under a sale authorized by the judgment is legal.

The proceedings having been fairly conducted, the fact that the notary who took the inventory and held the family meeting was the agent of one of the owners. is not ground to annul the sale.

In partition proceedings minors may be represented by a tutor *ad hoc* instead of a curator *ad hoc.*

The judgment of partition must be read with reference to the pleadings, and a mere clerical omission in the name of a defendant will not be of any avail when it is made manifest by them that it was owing to an absolute oversight.

The decree of partition protects purchasers notwithstanding that the citation was defective. The court had jurisdiction. The property sold for a fair value, and the citation was not so defective as to give cause to annul the sale after the judgment had been enforced without objection.

The defendant upon whom the defective citation was served has not assailed the judgment. The adjudicatees are without right, and should accept the title tendered.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

Henry Denis for Plaintiffs and Appellees:

1. Minors unprovided with tutors may be represented in a partition suit by cura-tors *ad hoc* or by special tutors. The difference is merely in the terms. C. P. 116, 195 and 946; C C. 813; Code of Practice of 1826; 25 An. 55; 23 An. 763.

Covas et al. vs. Bertoulin et al.

2. A clerical error or omission in the name of a defendant in the judgment does not affect the val .ity of said judgment, which should be read by the light of the pleadings. 42 An. 65

3. Difference between want of process and defective or irregular process. In the latter case the judgment is valid if defendant did not complain in time. Freeman on Judgments, Sec. 126, and notes; Black on Judgments, Vol. 1, Secs. 223, 245, 263; 2 How. 340; 4.Peters, 477; 110 U. S. 188; 4 Rob. 258; 2 Woods, 37.

4. A judgment can not be attacked collaterally unless it is void on its face. Black on Judgments, Vol. 1, Sec. 246; 42 An. 369; 38 An. 812; 30 An. 947; 25 An. 125; 10 Wall. 283; 16 Wall. 366; 20 Wall. 249.

5. Degree of insanity at which interdiction can be obtained. Same test to annul the acts or contracts of parties as to provoke their interdiction. 38 An. 547; 35 An, 441; 31 An. 757; 29 An. 302.

6. Article 402, C. C., under which the acts anterior to interdiction are annulled in cases of notorious insanity, only applies when there has been a subsequent interdiction. Laurent, Vol. 5, p. 374; 32 An. 93; 32 An. 171; 29 An. 302; 26 An. 464.

7. Same Art. 402 applies only to voluntary acts of the insane, not to judicial acts, such as citations and notices. Demolombe, Vol. 8, p 425; Laurent, Vol.5, p. 378; Baudry Lacantiniere, Vol 1, Sec. 1181; Fuzier-Hermann, C. C., Vol. 1, Art. 503 No. 6.

8. All men are presumed to be sane until the contrary is shown. 32 An. 1056; 39 N. H. 163; 27 Ill. 395; 12 Minn. 538; 108 Pa. 305; 63 Ala. 307.

9. A judgment against an insane person not interdicted is perfectly valid, in the absence of fraud. Freeman on Judgments, Sec. 152; Black on Judgments, Secs. 205 and 265; 48 Pa. 70; 48 Mich. 234; 15 Neb. 295; 50 Md. 214; 21 Ala. 797; 31 Ohio, 247; 14 Mass. 207; 33 Me. 114; 29 N. H. 299; 81 Mo. 610.

10. An insane person in Louisiana must be cited through himself, and not through a curator *ad hoc*, even for the purpose of interdiction. 23 An. 27; 16 La. 67; 1 Martin, N. S., 551.

11. Insanity can not be pleaded by a defendant unless a suit for interdiction has been previously instituted. C. C., 1788, No. 4.

12. Irregularities in the proceedings are cured by the judgment, which protects the purchaser. 38 An. 518; 25 An. 55; 2 How. 319: 2 Wall. 216; 3 Wall. 406; 16 Wall. 366; 101 U. S. 417.

*Jerome Meunier* on the same side.

*White, Parlange & Saunders* and *Farrar, Jonas & Kruttschnitt* for Defendants and Appellants:

1. A notary public who is himself a defendant in a partition suit, either in his own behalf or as agent for one of the co-owners of the property, can not hold family meetings on behalf of minor co-owners of the property sought to be partitioned.

2. Non-resident minors must be represented by curators *ad hoc*, and not by special tutors. Code of Practice, Art. 116.

Any legislation contained in the Civil Code contradicting this article of the Code of Practice must yield to the Code of Practice under Sec. 514 of the Revised Statutes.

3. A citation which does not state the number of days allowed to defendant to file his answer is null. Kendrick's Case, 19 La. 36; Dupuy vs. Arceneaux, 21 An. 629. Such a citation can not form the basis of a valid judgment.

Covas et al. vs. Bertoulin et al.

4. The Louisiana law, differing from the French law, allows any one to provoke the interdiction of an insane person, and further allows the appointment of an administrator *pro tempore* as soon as the interdiction proceedings are filed.  C. C. 391, 394.

Under this state of the law, which differs entirely from the French law, a person having a claim against another notoriously insane must provoke his interdiction and the appointment of an administrator *pro tempore,* against whom he can proceed contradictorily to assert his rights.  Any other theory of the law would lead to inhuman and appalling consequences.

5. The provision of Art. 1788 of the Civil Code, that no contract of an insane man can be annulled unless his interdiction has been decreed, and that no exception of insanity can be set up unless interdiction has been applied for, applies solely to the heirs or other representatives of the insane man, and not to third persons, whose exception is based upon the proposition that interdiction proceedings may at any moment be filed and the validity of the acts of the interdict thus put at issue to their prejudice.

6. The title tendered to an adjudicatee at public sale in order to compel his acceptance must be a full, clear and unencumbered title in fee simple, and not a clouded title, even if it be one which will be pronounced valid by a court of justice after a trial.  Bachino vs. Coste, 35 An. 572, and authorities there cited

The opinion of the court was delivered by

Breaux, J.  A judgment of partition was obtained and property was ordered to be sold to enable the owners to divide the proceeds in proportion to their respective interests.

The adjudicatees of the property sold under said judgment refuse to consummate the sale.

The pending rule was filed to compel them to accept the title tendered.

The judgment of the District Court made the rule absolute.

The adjudicatees appeal from that judgment.

In their answer to the rule they present eight different grounds of defence.

The first has been abandoned by them; the second, as numbered, is argued under the fourth head.  The questions being virtually the same will be considered together.

We will discuss in the first place the issues under the allegations that the defendants *Narcisso Lopez Sigur,* (owner of the one-thirtieth part of the property) *is and was, at the time suit was brought for a partition, of insane mind; that his mental condition was well known by his acquaintances and relatives and by those who conversed with him.*

*That he refuses to have anything to do with any business matter: to read or to sign any business paper; that he could not take notice of*

Covas et al. vs. Bertoulin et al.

*the said partition proceedings, and was not represented, and that they-*
*are null and void.*

For the sake of some brevity, we will not set forth at length the facts bearing upon this point, but state our conclusions after having considered the evidence.

It is proven that in 1880, and prior, this defendant was a young practising physician of some promise at Morgan City. He, about the end of said year, lost his wife and child.

The severe and depressing affliction caused him to leave the place, and brought about a marked change in his life.

He is intensely religious, and avoids all business affairs and conversation on the subject of business.

It is shown that he has refused to read a letter of advice of a small amount collected for his account, and indorse a draft it inclosed, that it might be collected.

Small sums have been collected for him, which he refused to receive, and have by those who made the collection been placed to his credit in bank.

At times his utterances on the subject of religion are extravagant and unreasonable.

He was called upon once by a physician whose testimony is of record. The defendant, before he saw the physician, who approached him unaware, conducted himself as if he imagined he saw some one with whom he conversed and suggested mysterious questions he pretended to answer.

These are the unfavorable symptoms in the defendant's case.

They were not shown to be the prevailing condition of his mind.

The hallucinations were not permanent; immediately after the presence of the physician, who came upon him without his observing, he desisted and was quite rational.

He conversed, and the physician as a witness testifies that there was no cause for interdiction.

He met him several times and conversed with him. He says that he is a "well read" and "learned man."

Three other physicians of defendant's neighborhood, who have testified, do not state that the defendant is of unsound mind.

His sister, with whom he resides, testifies that he is sane.

He has taught her children and the young son of a neighbor English, French and to calculate. In their sickness he prescribed for and nursed her and her children. He reads most of the time.

The defendant is not permanently affected with a delusion upon any subject.

He has ample will power to control himself, as proven by the fact that immediately after he discovered he was observed by a physician, he at once resumed his self-control and conversed intelligently.

It is not proven, with reference to business, that owing to unsoundness of mind he refuses to give it concern.

If it be more than intense eccentricity on his part it is not shown by the evidence.

These eccentricities have not resulted in any loss to him.

To annul the judgment the evidence should be as conclusive of insanity as is required to justify a decree of interdiction.

" Il ne suffit pas qu'il y ait aliénation, il faut que cet état soit habituel.    *    *    Ce n'est pas sur quelques actes isolés qu'on s'avisera de décider qu'un homme a perdu le sens et la raison; telle est la triste condition de l'humanité, que le plus sage n'est pas exempt d'erreur.   Mais lorsque la raison n'est plus qu'un accident dans la vie de l'homme, lorsqu'elle ne s'y laisse apercevoir que de loin, tandis que les paroles et les actions de tous les jours sont les paroles et les actions d'un insensé, on peut dire que c'est un état habituel de démence; c'est alors le cas de l'interdiction." Laurent, Vol. 5, p. 289.

The acts and words of the defendant, as disclosed by the record, are not those of a person insane.

We are confident of the correctness of this conclusion.

If, however, defendant's mental condition were as contended by the defendants in rule, the objections urged by plaintiffs in rule, based on Art. 402, C. C., that the defendant has not been interdicted, and that no petition for his interdiction has been filed, and that his insanity was not generally known by the persons who saw and conversed with him, are well founded.

No attempt has been made to interdict the defendant Sigur.

Those nearest to him, and who well knew his mental and physical condition, testify that he is not insane.

Therefore, the cause for " interdiction did not notoriously exist." C. C. 402.

Third persons not near the defendant are protected by the said article.

*Third. The notary who took the inventory and held the family meet-ing was agent, it is alleged, of one of the owners.*

The facts bearing on the point are, that the property was owned by Hellen Gottschalk, Marco Gianovich and the heirs of Auguste Roche, each in the proportion of one-third.

James Fahey was the agent of Hellen Gottschalk and Marco Gianovich.

In taking the inventory they were represented by N. B. Trist, who acted in place of the agent.

The family meeting in the interest of the minor heirs of Auguste Roche, deceased, was held by Fahey, notary.

The proceedings were conducted, the judgment was obtained and the sale made without the least objection.

If there was any ground of objection it was not timely made.

The purchasers of the property have no cause of action on the said ground. Not the least wrong or influence is suggested.

The notary was duly appointed and acted in compliance with the court's order.

In the absence of complaint on the part of those directly inter-ested, the court will not annul proceedings on that ground after judgment and sale.

*Fourth. The minors, absentees, were represented by special tutors and not by curator ad hoc, is another ground upon which the adjudicatees refuse the property.*

The record shows that special tutors were appointed, and not curators *ad hoc.*

Article 116 of the C. P. directs that the former shall represent the minor, who has no tutor.

Article 964 of the same Code directs that persons having claims against a minor or a person absent, in pursuing the same, in their peti-tion must pray the court to which it is addressed to appoint a tutor or curator *ad hoc* to defend the minor or absent person in the action.

Under Art. 195, C. P., service may be made on the tutor or cura-tor *ad hoc.*

The qualifications and the functions of the tutor *ad hoc* and of the curator *ad hoc* are the same. The same rule and responsibilities apply to each.

Article 116 of the C. P. is not the only article on the subject.

If it were, it would prevail over the Art. 313 of the C. C.

Corvas et al. vs. Bertoulin et al.

The articles quoted, i. e., 964 and 195, C. P., authorize the appoint-ment of a tutor *ad hoc.*

These two articles and the articles of the Civil Code do not conflict, and, construing them together, we conclude that a minor may be represented by a tutor *ad hoc,* as authorized by Arts. 964, C. P., and 313 of the C. C.

It is further contended, under this head, that no provision is made for the representation of a minor by a special tutor, save and except in case the several minors have the same tutor, when it becomes· necessary to appoint separate representatives to each of them.

While it is always preferable to qualify the legal representative of a minor with the technical words of the law, and the words *ad hoc,* applied to a tutor, should not be omitted nor supplied by the word "special" or any other, the difference between the two, "special" and *ad hoc,* will not justify the annulling of judgment and a sale· made in compliance with the judgment.

That the tutor was "special" instead of *ad hoc* is not a cause of nullity. The difference is in the name; the meaning of the word is the same.

This conclusion on this point does not lessen the necessity, constantly manifesting itself, of clear and distinctive technical names in jurisprudence.

*Sixth.* Objection is made that judgment was taken against Narcise Lopez, instead of against Narcise Lopez Sigur.

In the petition, in the citation, the name is properly written. Service was made on the said Sigur.

It happens that by clerical omission the name is not written in full in the judgment.

The terms of the judgment referring to the proceedings made it conclusive that it was a mere omission.

This point is disposed of under the authority of the Succession of Corrigan, 42 An. 65. In partition proceedings the judgment of partition must be read with reference to the pleadings.

*The next objection is grounded on the fact that judgment was taken by default against the said defendant, on a citation which did not state as required by the C. P. that he must file his answer within ten days; adding one additional day for every ten miles from his residence to the court house.*

The defendant resides in Iberville parish, and was cited to answer

44

in ten days. He had, as a matter of fact, the required delay to answer, although not expressed on the face of the citation.

The citation is defective beyond all question; it remains for us to determine whether it has had the effect of giving the court jurisdiction.

The title to the property is clear and undisputed. The issue is strictly one relating to partition.

The proceedings are in their nature *in rem* and the property represents the owner.

They are summary. C. C. 1328; C. P. 1024, 1025.

The parties in interest had an absolute right to a partition of the property.

The defendant was cited, the service was personal, except as relates to the delays not expressed; the citation was in legal form. An inventory was taken; default was entered, and all the proceedings are in due form, except in the one particular complained of.

The court, having acted within the scope of its authority, is presumed to have acted rightly in entering the judgment of partition.

The intendment of the law favors the maintenance of such judgments.

In the case of Kendrick Heirs vs. Kendrick, 19 La. 36, referred to by defendants in rule, the plaintiffs proceeded against the widow in community, for a settlement and payment of the community debts: to recover from her the separate property of their deceased ancester, and for a partition of the estate. The action, except as to the partition, was *in personam*. The defendant, *in limine*, excepted to plaintiff's petition on several grounds, among them that the service of citation was illegal.

The exception was maintained, as it would have been in the pending case if Sigur had excepted before judgment.

The other case referred to was also *in personam*.

The citation was defective, and the defendant had not been legally cited.

On appeal between the parties to the judgment it was annulled. Dupuy vs. Arceneaux, 21 An. 629.

A number of concurring acts in matter of partition may bind a defendant, despite an illegal citation. He has remained silent while third persons bought the property for a fair consideration on the faith of proceedings among joint owners.

He is estopped from assailing a judgment of partition after his virtual acquiescence in the results.

With reference to partition we quote, as applying from, "Black on Judgments:" "And where such proceedings are regularly prosecuted, and there is nothing showing any fraud or collusion, a person cited only in the class of 'unknown owners' is concluded, although in reality at the time he was in possession claiming in severalty, because by his silence he admits the tenancy in common and the right of the petitioners to have partition."

The judgment was valid as to those who acquired rights under the sale it ordered. It is not assailed directly or indirectly by the defendant. The record shows that the sale was regular.

With the exception of the illegality in the form of the citation, the defendant would have had no defence had he chosen to answer.

"The nullity of a judgment rendered against a party without his having been cited * * * may be demanded at any time, unless the defendant were present in the parish and yet suffered the judgment to be executed without opposing the same." C. P. 612.

The defendant was not in the parish where the property is situated.

For the purpose of the partition, however, he was within the jurisdiction of the court.

The court in construing this Art. 612 has safeguarded the rights of defendants, from which we do not depart in holding that in partition proceedings the defendant being under the law within the jurisdiction of the court which rendered the judgment can not have a judgment annulled on the grounds alleged in the rule in the pending case, and much less can the adjudicatee have a sale declared void after the defendant has "suffered the judgment to be executed without opposing the same."

*Lastly: Objection is made that the judgment by default against Narcise Lopez Sigur was taken prematurely.*

This objection is not supported by the facts.

The full delays had elapsed before the default was taken.

The adjudication was legally made. There is no good reason why the title tendered should not be received and the sale consummated.

Judgment affirmed at appellants' costs.